UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

REPORT AND RECOMMENDATION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Liberty Corporate Capital, Ltd.,

                Plaintiff,

vs.

Phi Omega Chapter of Phi Sigma Kappa
at Minnesota State University, Moorhead,
Jason J. Morris, Christopher M. Sayre,
James J. Sander, Nicholas R. Gulmon,
Marcus O. Carney, Raymond Joseph
Ogren, Evan Michael Narog, Jesse A.
Bridley, Julian Kycia, individually, and as
trustee for the next of kin of Patrick Kycia,
Rose Marie Foley, Adam Kycia, and
Julian Alexander Kycia, a minor, by his
father Julian Kycia,

                Defendants.        Civ. No. 06-4808 (JMR/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

I. Introduction

    This matter came before the undersigned United States Magistrate Judge pursuant to a special assignment, made in accordance with the provisions of Title 28

U.S.C. §636(b)(1)(B), upon the Defendants' Motion to Stay. A Hearing on the Motion was conducted on May 10, 2007, at which time, the Plaintiff appeared by Nolan C. Burkhouse, and Patrick J. Larkin, Esqs., and the Defendants appeared by Kevin P. Hickey, Esq. For reasons which follow, we recommend that the Defendants' Motion be denied.

## II. Factual and Procedural Background

This is a Declaratory Judgment action that arises out of the death of Patrick Kycia ("Kycia"). On September 27, 2005, the body of Kycia, who was a nineteen (19) year old college student, was found floating in the Red River in Moorhead, Minnesota. Kycia was last seen alive on the evening of September 22, 2005, at a fraternity party held in the Phi Sigma Kappa (the "Local Chapter") fraternity house, where he was allegedly served alcohol by fraternity members until severely intoxicated.

On February 11, 2006, Julian Kycia petitioned the Court to serve as the trustee of the next of kin of Kycia, and together with Rose Marie Foley, Adam Kycia, and Julian Alexander Kycia (the "Kycia Defendants"), filed a Complaint on May 5, 2006, in Clay County District Court (the "State Action"), alleging individual tort liability against The Grand Chapter of Phi Sigma Kappa, Inc. ("National Organization"), Moorhead State University, Minnesota ("MSU-M"), Randy Morris ("R. Morris"), who

was the owner of the Local Chapter's fraternity house, the Local Chapter, and Jason J. Morris ("J. Morris"), Christopher M. Sayre ("Sayre"), James J. Sander ("Sander"), Nicholas R. Gulmon ("Gulmon"), Marcus O. Carney ("Carney"), Raymond Joseph Ogren ("Ogren"), Evan Michael Narog ("Narog), and Jesse A. Bridley ("Bridley")(collectively, the "Individual Fraternity Members").[1]

The Plaintiff, Liberty Corporate Capital, Ltd. ("Liberty"), is the insurer of the Local Chapter and its members. After Kycia's death, Liberty conducted an investigation, and ultimately denied coverage to the Local Chapter, and to the Individual Fraternity Members. On December 7, 2007, Liberty commenced this action, see, Complaint, Docket No. 1, to obtain a declaration that it has no duty to defend, or to indemnify, the Local Chapter, or the Individual Fraternity Members, against the allegations in the State Action, under the insurance policy ("Policy") that was issued to the National Organization.

In February of 2007, the Defendants Gulmon, and Carney, stipulated to no coverage under the Policy, see, Docket Nos. 22, 25 and 41-43, and on May 4, 2007,

---

[1] The underlying State Court action alleges that Kycia was served alcohol by the Individual Fraternity Members. Between December of 2006, and January of 2007, Gulmon, Bridley, and J. Morris, entered guilty pleas for furnishing alcohol to a minor, and were sentenced in State Court. See, Plaintiff's Memorandum in Opposition, Docket No. 54, at p. 3.

the Court entered Default Judgments against the Local Chapter, Ogren, Narog, and J. Morris. See, <u>Docket Nos. 55-58</u>. As a result, the only remaining Defendants in this action are the Kycia Defendants, as assignees of the rights of Sander,[2] see, <u>Affidavit of Marshall</u>, <u>Docket No. 52</u>, Exhibit B, and the individual Defendants Bridley, and Sayre. See, <u>Plaintiff's Supplemental Opposition to Motion</u>, <u>Docket No. 59</u>. The close of discovery in the State Action is set for August 1, 2007, with Trial set for October 29, 2007. See, <u>Affidavit of Marshall</u>, supra at p. 2. The Kycia Defendants now seek a stay of this action, see, <u>Docket No. 49</u>, pending the resolution of the State Action.

### III. <u>Discussion</u>

According to the Defendants, we should stay the proceedings, here, in order to allow the State Action to be resolved on the underlying questions of liability and damages. The Defendants contend that a Stay would advance the interests of justice,

---

[2] After Sander moved to stay the State Action, because he had enlisted in the military, he and the Kycia Defendants entered a <u>Miller-Shugart</u> Agreement. See, <u>Affidavit of Andrew L. Marshall</u>, <u>Docket No. 52</u>, Exhibit B. In a <u>Miller-Shugart</u> settlement, a plaintiff settles with a tortfeasor but agrees that the Judgment will only be collected from the proceeds of any applicable insurance policy. The Minnesota Supreme Court upheld this type of settlement in <u>Miller v. Shugart</u>, 316 N.W.2d 729, 734 (Minn. 1982), concluding that an insured does not breach a duty to cooperate with the insurer by settling with the plaintiff prior to a determination of the policy's coverage.

as the resolution of the issues, here, will necessarily depend upon factual findings, and legal determinations, concerning the nature of the claims asserted in the State Action, which could render this action moot. In addition, the Defendants argue that allowing this action to proceed carries the risk of inconsistent results, as well as inefficiencies for both this Court, and the parties.

The Plaintiff opposes the Motion, and maintains that this action will clarify, and resolve issues of insurance coverage, for the Local Chapter and the remaining Individual Fraternity Members, which are not being considered, and will not be resolved, in the State Action.

    A.    <u>Standard of Review</u>.  "Years ago, the Supreme Court noted that district courts are 'under no compulsion to exercise' their jurisdiction under the Declaratory Judgment Act, 28 U.S.C. §§2201, 2202 (1988)." <u>U.S. Fidelity and Guar. Co. v. Murphy Oil USA, Inc.</u>, 21 F.3d 259, 260 (8th Cir. 1994), citing <u>Brillhart v. Excess Ins. Co. of America</u>, 316 U.S. 491, 494 (1942); see also, <u>Wilton, et al. v. Seven Falls Company, et al.</u>, 515 U.S. 277, 289-90 (1995)("[D]istrict courts' decisions about the propriety of hearing declaratory judgment actions, which are necessarily bound up with their decisions about the propriety of granting declaratory relief, should be reviewed for abuse of discretion.").

As our Court of Appeals has explained:

> The [Supreme] Court [has] said, "Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." Brillhart v. Excess Ins. Co. of America, 316 U.S. 491, 494 (1942). Since then, the Court reaffirmed its "prior holding that a federal district court should, in the exercise of discretion, decline to exercise diversity jurisdiction over a declaratory judgment action raising issues of state law when those same issues are being presented contemporaneously to state courts." Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 126 (1968) (citing Brillhart, 316 U.S. 491). Very recently, the Court reiterated the position: "As we have noted, the Declaratory Judgment Act affords the district court some discretion in determining whether or not to exercise that jurisdiction, even when it has been established." Cardinal Chem. Co. v. Morton Int'l, Inc., 113 S.Ct. 1967, 1974 n. 17 (1993)(citing Brillhart, 316 U.S. at 494-96). The language of the Act dictates that result: "In a case of actual controversy within its jurisdiction, * * * any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration * * * " 28 U.S.C. §2201 (emphasis added).

U.S. Fidelity and Guar. Co. v. Murphy Oil USA, Inc., supra at 260-61.

As a result, in Federal cases, which are brought under the Court's diversity jurisdiction, and which involve a Declaratory Judgment, the Court has the discretion to issue a Stay, or to abstain from exercising jurisdiction altogether, where there is a

parallel State Court proceeding, .  See, <u>Scottsdale Ins. Co. v. Detco Industries, Inc.</u>, 426 F.3d 994, 996-97 (8th Cir. 2005), citing <u>Wilton v. Seven Falls Co.</u>, supra at 278.[3]

As a threshold matter, in determining whether a Stay is appropriate, we look to whether parallel proceedings were pending in State Court at the time that the Federal Declaratory Judgment action was filed.  See, <u>Scottsdale Ins. Co. v. Detco Industries, Inc.</u>, supra at 996-97.  Suits are parallel if "substantially the same parties litigate substantially the same issues in different forums."  <u>Id.</u> at 997, quoting <u>New Beckley Mining Corp. v. Int'l Union, United Mine Workers of America</u>, 946 F.2d 1072, 1073 (4th Cir. 1991); see also, <u>Continental Cas. Co. v. Advance Terrazzo & Tile Co.</u>, 462 F.3d 1002, 1006 (8th Cir. 2006); <u>Kingsland Systems Corp. v. Colonial Direct Financial Group, Inc.</u>, 188 F. Supp. 2d 1102, 1111-12 (N.D. Iowa 2002)(cases are parallel when the resolution of one of the actions could afford the plaintiff complete relief).

If no parallel State action exists, the Court's discretion to decline to exercise jurisdiction is greatly reduced.  See, <u>Scottsdale Ins. Co. v. Detco Industries, Inc.</u>,

---

[3]In <u>Wilton v. Seven Falls Co.</u>, 515 U.S. 277, 286 (1995), the Supreme Court found that actions under the Declaratory Judgment Act afforded District Courts greater discretion to determine the advisability to stay, or dismiss the action, than cases under Section 4 of the Federal Arbitration Act, which require the application of an "exceptional circumstances" test in considering whether to defer to a paralleling State Court proceeding.  See, <u>Colorado River Water Conservation Dist. v. United States</u>, 424 U.S. 800 (1976); <u>Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1 (1983).

supra at 998-99. In cases where the State Court case is not parallel to the Federal action, our Court of Appeals considers six (6) factors to determine whether a Stay is appropriate: (1) whether the Declaratory Judgment will serve a useful purpose; (2) whether the Declaratory Judgment will afford relief from uncertainty, insecurity, or controversy; (3) the strength of the State's interest in having the issues decided in State Court; (4) whether the issues raised in the Federal action can more efficiently be resolved in State Court; (5) whether the Federal action would entangle the Federal and State Court systems; and (6) whether the Declaratory Judgment is being used merely as a device for procedural fencing. See, Scottsdale Ins. Co. v. Detco Industries, Inc., supra at 998, citing Aetna Cas. & Surety Co. v. Ind-Com Electric Co., 139 F.3d 419, 422 (4th Cir. 1998); see also, Continental Cas. Co. v. Advance Terrazzo & Tile Co., supra at 1007; United Health Group, Inc. v. Lexington Ins. Co., 2006 WL 695523 at *6 (D. Minn., March 17, 2006).

    B.    Legal Analysis. The Defendants argue that the State Action, and this action, are parallel since substantially the same parties, and issues, are involved. Liberty disagrees, and underscores that it is not a party to the State Action, and that MSU-M, and the National Organization, although named defendants in the State Action, are not parties here. In addition, Liberty emphasizes that the insurance

coverage issues, which are being litigated here, will not be addressed by the State Court, since that Court will solely resolve the tort liability, and damages issues, which arise from the decedent's passing.  Liberty acknowledges that, as a defendant in the State Action, Sanders entered a <u>Miller-Shugart</u> Agreement, which assigns any right to insurance coverage, that he might have had under the Policy issued by the Plaintiff, to the Kycia Defendants, but urges that such an agreement does not place, as an issue in the State Action, the insurance coverage question, since the <u>Miller-Shugart</u> agreement merely substitutes the Kycia Defendants, for Sanders, if that insurance coverage is found appropriate by this Court.

Our Court of Appeals considered the effect of a pending State action, on a parallel Federal claim, in <u>Capitol Indemnity Corp. v. Haverfield</u>, 218 F.3d 872, 874 (8th Cir. 2000).  There, after a suit was filed in State Court against its insureds, an insurer brought a Declaratory Judgment action in Federal Court claiming that the insureds were excluded from coverage, based upon an assault and battery provision in the insurance policy.  Before the District Court could rule, the State Court entered a Judgment against the insureds, and the plaintiffs, in the State Court action, commenced a garnishment -- or indemnity -- action against the insurer, who reacted by adding those plaintiffs, as defendants, in the Federal Declaratory Judgment case.  <u>Id.</u>

Motions for Summary Judgment were filed in both the State and Federal actions, and the State Court found that the insureds were covered under the policy. Id. The Federal Court, apparently unaware of the State Court's decision, subsequently found that coverage under the insurance policy was inappropriate. Id. Our Court of Appeals held that the District Court had abused its discretion in failing to Stay the Federal case, as the State Court tort claim involved the same parties, the same issue, the same insurance policy, and the same arguments, as those pursued in the Federal Court. Id. at 875. Specifically, the Court noted that Missouri Courts were split on the interpretation of the assault and battery provision in the insurance policy, which was central to both the State and Federal actions, and that, as the State Court was in a better position to interpret State law on that issue, "permitting th[e] federal action to proceed was unnecessarily duplicative and uneconomical." Id.

In contrast, in Allstate Insurance Co. v. Garrett, 1 Fed.Appx. 615, 616-17 (8th Cir. 2001), the Court distinguished the facts before it from those in Haverfield, and found that a pending State Court action was not parallel to a Declaratory Judgment action, which arose from the same incident, and which was filed in Federal Court. In Garrett, an insurance company sought a Declaratory Judgment in Federal Court that the insureds -- husband and wife -- were not covered by their insurance policy for

injuries sustained by the wife during a boating accident. Id. at 616. The injured wife had previously filed an action in State Court so as to establish her husband's liability for her injuries, and the insurance company had also been named as a party to that action. In finding that a Stay of the Federal case was inappropriate, the Court noted that the arguments, and relevant issues, in the State and Federal actions were not the same. Further, while the insurer was named in the State Court action, no indemnity action had been filed by the plaintiffs in that matter. Finally, in contrast to Haverfield, State law on the exclusionary clause, which was at issue in the Federal action, was well-settled, and consequently, there was little danger that the validity of the Federal Court's decision would be called into question on appeal of the State Court decision.

The same result was reached in Pharmacists Mutual Insurance Co. v. Courtney, 2003 WL 950081 (W.D. Mo., February 4, 2003), which involves closely analogous facts to both Garrett, and this case. In Courtney, Courtney's insurer commenced a Federal Declaratory Judgment action to establish that the insurer was not required to provide coverage, or a defense, to civil cases which alleged that Courtney had diluted various drug prescriptions before selling them to his customers. The Court concluded that the State action was not a parallel proceeding even though, there, the plaintiffs in one (1) of more than 350 underlying actions, had commenced a garnishment action

against Courtney's insurer, but had not served process in that action, and notwithstanding the fact that the insurer was named as a defendant in the underlying actions. The Court concluded that the actions were not the same, since the insurer could not raise the issue of insurance coverage in the underlying proceedings, and there was nothing in those proceedings that would have a preclusive effect on the insurer's denial of coverage. Id. at *1-2.

Notably, the Court found Haverfield to be inapposite, reasoning as follows:

> Haverfield does not establish a per se rule requiring dismissal or stay of a declaratory action once a garnishment action has been filed in state court; it requires consideration of the relationship and potential conflict between the two proceedings.

Id. at *3.

In addition, the Court noted that "there can be little doubt that the court of appeals was concerned about the contradiction in having the state court rule one way and then, shortly thereafter, the federal court rule the opposite way on a matter of state law." Id. at *2. While not citing Garrett, the Court, in Courtney, also declined to stay the Federal Declaratory Judgment proceeding for the reasons that were earlier addressed in Garrett.

We find that the State and Federal Actions, here, are not parallel, as the facts before us most closely resemble those in Garrett, and Courtney, rather than in

Haverfield. As in Garrett, the Plaintiff insurance company in this action is not a party to the State Action, and no indemnity action has been initiated against Liberty. In addition, the matter before the State Court sounds in tort, and will not address the insurance coverage issues that are central to the Federal action. In our considered view, resolving the issue of insurance coverage, on a timely basis, will be advantageous for all parties. Moreover, the only issue presented, in this action, involves the interpretation of a provision in the underlying Policy which denies coverage for violations of a Fraternity Alcohol Policy, and none of the parties, here, suggests that the resolution of that matter will encroach on any areas of unsettled State law.

The Defendants acknowledge that the State Action will not resolve the issue of insurance coverage, but argue that, if we fail to stay the proceedings before us, our decision concerning insurance coverage could be inconsistent with some factual finding in the State Court. However, if such a risk is presented -- and we have more than passing doubt as to that proposition -- the factual findings, here, would only be material to the insurance coverage, contract question, and would not implicate a different result as to the liability and damages questions that will be decided in the State Action. While we cannot foreclose some possibility that each action will involve the provisions of a Fraternity Alcohol Policy, if one exists, the issues presented, here, are

13

almost entirely legal, as opposed to factual. Indeed, we have no showing, here, that any factual findings in the State Action could collaterally estop the parties to this action, and most particularly Liberty, which is not a party to the State Action.

The Defendants also note that they could implicate Liberty in the State Action, at any time, by initiating a garnishment proceeding under the <u>Miller-Shugart</u> agreement but, they urge, it is more efficient for all parties to defer such a proceeding until the State Court has resolved the underlying tort claims at a Trial, which is set in the State Action for October of 2007. Given the often lengthy process that goes into an appeal of a Trial Court Judgment, we do not share the Defendants' optimism that the State Action will be resolved shortly after the Trial date, and we remain realistically concerned that the ultimate resolution of this case -- one solely of contract interpretation -- could be seriously delayed if we were to defer a Judgment on the insurance coverage issue until after all appeals are exhausted in the State Court.

Since we are unable to find that the State and Federal Actions are parallel, we are, therefore, obligated to apply the six (6) factor test that is set out in <u>Scottsdale Ins. Co. v. Detco Industries, Inc.</u>, supra at 998, in order to determinie whether a Stay of this action is warranted. With respect to the first two (2) factors of the test, we find that they do not favor the absention of this Declaratory Judgment proceeding, as the

14

Declaratory Judgment will clarify the issues of insurance coverage that will not otherwise be resolved in the currently pending State Action, and will provide certainty to the parties, which could facilitate settlement prior to the State Court Trial, or during any appeals from that Trial.  Considering the third factor, we conclude that, given the settled nature of the law of insurance contract construction, the State's interest is not strong, and no efficiencies plainly appear from awaiting the State Court's determination of the liability and damages issues.  Moreover, Liberty notes that it has not been established whether the Policy must be interpreted under Minnesota law, which would further diminish the State's interest.  See, <u>St. Paul Guardian Ins. Co. v. Shannon & Wilson, Inc.</u>, 2006 WL 1479521 at *3 (E.D. Mo., May 25, 2006).

As to factors four and five, it could well benefit the State Court to have the issue of insurance coverage resolved prior to the Trial of the State Action, or during any appeals, as that "action sounds in tort and the federal action in contract." <u>Scottsdale Ins. Co. v. Detco Industries, Inc.</u>, supra at 999.  Since the State Court has not been called upon to consider, much less resolve, the insurance coverage issues which are before us, and since we are not faced with unique questions of State law, there appears to be little danger of an entanglement between the two (2) Courts, or of conflicting results.

While the Defendants question the judicial economy of allowing the Federal Action to proceed, since a Defense Verdict in the State Action would obviate any need to address the insurance coverage issues, we are not confident that the State Action, and all available appeals, would be exhausted before the coverage question is resolved. Indeed, an equally, or a more compelling argument can be made, that a resolution of the coverage question could obviate the need to try liability and damages in the State Action, if coverage for the defendants, in that action, is found legally unavailable. Finally, this is not a case where Liberty seeks to "win a race to the Courthouse" through the filing of this Federal Action, as the Defendants never engaged in that race by the filing of a paralleling State Court garnishment proceeding. Accordingly, finding that the pertinent factors weigh against a decision to abandon, or stay, our jurisdiction over this matter, we recommend that the Defendants' Motion to Stay be denied.

NOW, THEREFORE, It is --

RECOMMENDED:

That the Defendants' Motion to Stay [Docket No. 49] be denied.

BY THE COURT:

Dated: June 21, 2007            *s/Raymond L. Erickson*
                                        Raymond L. Erickson
                                        CHIEF U.S. MAGISTRATE JUDGE

**NOTICE**

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than July 10, 2007,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete

transcript of that Hearing **by no later than July 10, 2007,** unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.