```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF MINNESOTA
                   06-CV-4808(JMR/RLE)
```

| | | |
|---|---|---|
| Liberty Corporate Capital, Ltd. | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| Phi Omega Chapter of Phi Sigma Kappa at Minnesota State University Moorhead; Jason J. Morris; Christopher M. Sayre; James J. Sander; Nicholas R. Gulmon; Marcus O. Carney; Raymond Joseph Ogren; Evan Michael Narog; Jesse A. Bridley; Julian Kycia, individually, and as trustee for the next of kin of Patrick Kycia; Rose Marie Foley; Adam Kycia; and Julian Alexander Kycia, a minor, by his father, Julian Kycia | ) ) ) ) ) ) ) ) ) ) ) ) ) | |

The tragic death of Patrick Kycia, a very young man, brings this case to the Court. Mr. Kycia died after drinking with members of Phi Sigma Kappa ("PSK") fraternity at Minnesota State University Moorhead ("MSUM"). Kycia's family members[1] filed tort claims in Minnesota state court against certain fraternity members,[2] the

---

[1] The following members of Patrick Kycia's family are named parties in both the state tort action and the present declaratory judgment action: Patrick's father, Julian Kycia; his mother, Rose Marie Foley; and his two brothers, Adam and Julian Alexander Kycia. The Court refers to these individuals as the "Kycia Defendants."

[2] The following fraternity members are named defendants in both the state tort action and the present declaratory judgment action: Jason J. Morris, Christopher M. Sayre, James J. Sander, Nicholas R. Gulmon, Marcus O. Carney, Raymond Joseph Ogren, Evan Michael Narog, and Jesse A. Bridley. The Court refers to these fraternity members as the "Individual Defendants."

Local Chapter of PSK, and its National Fraternity ("Underlying Action").

Plaintiff, Liberty Corporate Capital, Ltd., filed this action seeking declaratory judgment that its general liability insurance policy, held by the PSK National Fraternity, does not cover Patrick Kycia's death for either the Local Chapter or the Individual Defendants. Plaintiff and the Kycia Defendants have filed cross-motions for summary judgment on the coverage issue.

Plaintiff's motion is granted; defendants' motion is denied.

I. Background

The parties agree the material facts are not in dispute.

A. The Insurance Policy

PSK, headquartered in Indianapolis, Indiana, is a national social fraternity with approximately 79 chapters. In 2005, PSK held insurance through the Fraternity and Sorority Insurance Program. This policy, covering general liability, was underwritten by multiple entities through Lloyd's, London ("Underwriters"). The lead underwriter is Liberty Corporate Capital, Ltd., of the United Kingdom. The policy in effect when Patrick Kycia died was negotiated between PSK representatives and the Underwriters in 2000. The policy particularly limited coverage for conduct arising from alcohol abuse.

The insurance policy was Certificate No. 04JFR333-18-L ("Policy"). This policy designated the PSK Grand Chapter

("National Fraternity") as the "First Named Insured," with the PSK Foundation, Inc., being the only other "Named Insured." Undergraduate members and local chapters are not named insureds.

The policy provided coverage for undergraduate members by an endorsement under certain circumstances:

> f.   Each of the following entities or persons are insureds, but only while acting in accordance with the "Named Insureds" policies and procedures and their own policies and procedures, and only while acting within the scope of their duties, and only with respect to their liability for activities performed by them on behalf of the "Named Insureds", or of insured "Chapters", "Colonies", "Housing Organizations" or "Alumni Organizations":
>
> (1) "Chapters" and "Colonies"
> (2) "Undergraduate Insureds"

Policy, "Who is Insured Endorsement," JFR-FSL-064.

The policy further states:

> "Undergraduate Insureds" means:  individuals who are undergraduate collegiate students that are officers, members, or member candidates, that are affiliated with a "Chapter" or "Colony" whose affiliation with the "Named Insureds" is acknowledged to exist by the governing body of the First Named Insured at the time of loss.
>
> "Chapters" and "Colonies" means:  those collegiate undergraduate organizations that are organized, chartered, or recognized by and whose affiliation with the "Named Insured" is acknowledged to exist by the governing body of the First Named Insured at the time of loss.

Policy, "Fraternity/Sorority Additional Definitions Endorsement," JFR-FSL-063.

Beyond these restrictions on those insured, the policy specifically excludes coverage for violations of the fraternity's

alcohol policy:

> I. Special Additional Exclusion - "Violations of Fraternity Alcohol Policy"
>
> No insurance coverage afforded by this policy shall apply to any "Chapter", "Colony" or "Undergraduate Insureds" for any claim arising out of or in any way resulting from any "Violation" of "Fraternity Alcohol Policy".
>
> II. Additional Definitions
>
> "Fraternity Alcohol Policy" means: The written rules, regulations, or procedures regarding alcohol which are established by the First Named Insured and the "Chapter" or "Colony" at the time of loss.
>
> "Violation" means: Determination by the executive board of the First Named Insured, or legal authority that some breaking, infraction, or breach of "Fraternity Alcohol Policy" occurred.

Policy, "Endorsement #E, Special Additional Exclusion, Violations of Fraternity Alcohol Policy," JFR-FSL-080.

The National Fraternity has adopted numerous policies and procedures regarding alcohol. The Risk Management Manual, promulgated by the PSK Grand Chapter, states, inter alia:

> 1. The possession, sale, use or consumption of ALCOHOLIC BEVERAGES, while on chapter premises, or during a fraternity event, in any situation sponsored or endorsed by the chapter, or in any event an observer would associate with a fraternity, must be in compliance with any and all applicable laws of the state, province, county, city and institution of higher education, and must comply with either the BYOB or Third Party Vendor Guidelines (BYOB is defined as both individual members and individual guests, of legal drinking age, bringing their own alcohol to a function).
>
> 2. No alcoholic beverages may be purchased through chapter funds nor may the purchase of same for members or guests be undertaken or coordinated by

        any member in the name of or on behalf of the chapter.  The purchase or use of a bulk quantity or common sources of such alcoholic beverages, i.e. kegs or cases, is prohibited.

3. OPEN PARTIES, meaning those with unrestricted access by non-members of the fraternity, without specific invitation, where alcohol is present, shall be prohibited.

4. No members, collectively or individually, shall purchase for, serve to, or sell alcoholic beverages to any minor (i.e., those under the legal "drinking age"). . . .

11. The causing or contributing to the intoxication of any person, and/or furnishing of alcohol to a person or persons under the legal drinking age or under the influence of alcohol, and/or violation of any statute, ordinance, or regulation relating to the sale, gift, distribution, or use of alcoholic beverages, shall be viewed as a violation of the Grand Chapter Risk Management Policies.

Risk Management Manual, Alcohol and Drugs Policy, Bates #Liberty000160.

The National PSK Fraternity's guidelines concerning hosting official fraternity events specifically incorporate this alcohol policy.  Id.  The Local MSUM PSK Chapter's Bylaws incorporate the policy as well.  These rules explicitly prohibit underage drinking.  See Phi Omega Bylaws, Articles XVI-XVII.

    B. <u>Events in the Underlying Action</u>

On September 22, 2005, members of the PSK Local Chapter, Phi Omega, held a party at the residence generally known as the PSK "frat house."  This property, located at 611 10th Street, Moorhead, Minnesota, is not owned by the Local Chapter, but by a fraternity

5

member's father.  Rooms in the frat house are leased to fraternity members.  There were no fewer than eight PSK fraternity members present at the party, all named as "Individual Defendants" in both the Underlying Action and in this case.  Alcoholic beverages were consumed at the party.  While the identity of the individuals who served Mr. Kycia alcohol is disputed, the Court finds it irrelevant.  This is because there is no dispute that the party was open to members and non-members alike, with alcohol given to, and consumed by, underage drinkers.[3]

Patrick Kycia, a nineteen-year-old MSUM student, was neither a member, nor was he affiliated with the fraternity.  Patrick attended the party, during which he became extremely intoxicated.  He disappeared that night, and some five days later, on September 27, 2005, his body was recovered from the Red River.  Moorhead Police investigated his death.  Their investigation led to charges against certain fraternity members for furnishing alcohol to a minor.

Kycia's family filed their state tort action in Clay County, Minnesota, on May 6, 2006.  According to their complaint, the

---

[3]The Kycia Defendants' summary judgment briefs suggest these facts are in dispute.  They support the suggestion with statements of certain Individual Defendants, i.e., they did not buy beer for the party; they did not serve alcohol to persons younger than 21 years old.  Their suggestion fails, however, because the Kycia Defendants' complaint in the Underlying Action belies their briefs' denials that alcohol was not available to underage drinkers. Indeed, their state tort claims rely entirely on the fact that beer and hard liquor was furnished to underage drinkers, most particularly Patrick Kycia, causing his intoxication.

Individual Defendants, the property owner, the PSK National Fraternity, and the Local Chapter were liable for Kycia's death by failing to use reasonable care to protect his safety at the party. The complaint alleged eight counts: (1) dram shop violation against PSK and the Local Chapter; (2) dram shop violation against the Individual Defendants; (3) dram shop vicarious liability against PSK; (4) dram shop violation against the property owner; (5) negligence against PSK and the Local Chapter; (6) negligence against the property owner; (7) negligence against MSUM; and (8) negligence against the Individual Defendants. Each claim is premised on the fact that Patrick Kycia, under age 21, received, and was permitted to illegally consume, alcoholic beverages at the party.

The claims in the Underlying Action have been resolved in one fashion or another against most defendants. The state court granted motions for summary judgment and dismissed the claims against the National Fraternity, Sayre, Gulmon, and Bridley. The claims against Ogren and Narog were dismissed by stipulation. The Local Chapter defaulted. Sander entered into a Miller-Schugart[4] agreement with the Kycia Defendants in the Underlying Action on

---

[4] "A Miller-Shugart settlement agreement, a product of the seminal case, Miller v. Shugart, 316 N.W.2d 729 (Minn. 1982), arises where an insurer denies all coverage for an accident, and the abandoned insured agrees with the accident victim that judgment in a certain sum may be entered against it in return for the accident victim releasing the insured from any personal liability and agreeing to seek coverage from the insurer." Stan Koch & Sons Trucking, Inc. v. Great West Casualty Co., 517 F.3d 1032, 1036 n. 4 (8th Cir. 2008).

November 16, 2006.  In doing so, Sander defaulted on the issue of liability, and assigned the Kycia Defendants his rights to pursue insurance indemnity on the claims.  The claims against Morris and Carney are still pending in state court.

Plaintiff commenced this declaratory judgment action on December 7, 2006.  Named defendants in the suit are the Local Chapter, the Individual Defendants, and the Kycia Defendants.  Carney and Gulmon stipulated they were not entitled to coverage.  The claims against them were dismissed on February 27, 2007, and April 18, 2007, respectively.  This Court granted default judgment against the Local Chapter, Morris, Narog, and Ogren on May 3, 2007, and against Sayre and Bridley on August 2, 2007.  Judgment has been entered on all adjudicated claims.  The only remaining defendants in this action are Sander and the Kycia Defendants.

II.  Analysis

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-52 (1986).  This case rests on interpretation of an insurance policy, which the Court decides as a matter of law.  See Iowa Kemper Ins. Co. v. Stone, 269 N.W.2d 885, 886-87 (Minn. 1978).  As there is no genuine issue of material fact and the issue is one of law, the matter is ripe for summary disposition.

8

A.  <u>The Kycia Defendants' Standing</u>

The Court first considers whose rights it must adjudicate. The Kycia Defendants claim they are entitled, pursuant to the <u>Miller v. Shugart</u> agreement, to whatever rights are accorded Sander. They also claim coverage under rights afforded to the Local Chapter, which defaulted in the Underlying Action. They further assert rights under Morris's and Carney's coverage, whose liability in the Underlying Action has not yet been resolved.

Plaintiff replies, stating the Kycia Defendants lack standing to pursue coverage on behalf of any party other than Sander. The Local Chapter, Morris, and Carney have not assigned the Kycia Defendants any rights. Plaintiff notes the Local Chapter's and Morris's defaults; Carney's stipulation to being uninsured; the dismissal of claims against these three defendants; and the entry of judgment.

The Court finds the Kycia Defendants may independently pursue coverage for the Local Chapter, Morris, and Carney. Although those parties do not pursue coverage on their own behalf, a case or controversy certainly exists between plaintiff and the Kycia Defendants as to whether those parties were insured. <u>See</u> <u>Federal Kemper Ins. Co. v. Rauscher</u>, 807 F.2d 345, 354-55 (3d Cir. 1986). In <u>Federal Kemper</u>, a case procedurally similar to this, the Third Circuit found:

> the injured party has an independent, and not a derivative right, to be heard . . . . In terms of fairness, the injured party should be able to present its case upon the ultimate issues, even if the insured does

9

not choose to participate. Id.

Similarly, in addressing a coverage dispute where the insured had defaulted on the issue of coverage, the Seventh Circuit stated:

> The Supreme Court has held that in a declaratory judgment action an actual controversy exists between an injured third party - not a party to the contract of insurance - and the plaintiff insurer. Maryland Casualty co. v. Pacific Coal & Oil Co., 312 U.S. 270 (1941). It would be anomalous to hold here that an actual controversy exists between [the injured party] and [the insurer] and yet deny [the injured party] the right to participate in the controversy. . . . Since [the injured party] was a proper party, the default of [the two insureds] may not preclude [the injured party's] right in this respect.

Hawkeye-Security Ins. Co. v. Shulte, 302 F.2d 174, 177 (7th Cir. 1962). The Eighth Circuit expressly adopted the Seventh Circuit's approach when deciding Automobile Underwriters Corp. v. Graves, 489 F.2d 625, 627-28 (8th Cir. 1973) (finding injured party has standing to appeal adverse judgment).

Although the Local Chapter, Morris, and Carney have opted against pursuing coverage on their own behalf, the Kycia Defendants hold a real interest in determining whether those persons/entities are covered by the policy. As the injured parties, they should not be precluded from litigating those issues merely because putative insureds chose not to do so. For these reasons, and for purposes of this motion, the Court finds the Kycia Defendants have standing to pursue coverage not only on behalf of Sander, but also the Local Chapter, Morris, and Carney.

10

B.  <u>Who is an Insured?</u>

A court interprets an insurance contract as a matter of law. <u>Iowa Kemper</u>, 269 N.W.2d at 886-87.  Clear and unambiguous terms must be enforced as written.  <u>Smith v. St. Paul Marine Ins. Co.</u>, 353 N.W.2d 130, 132 (Minn. 1984).  The policy is construed as a whole, and a court may not read an ambiguity into a policy's plain language.  <u>Hubred v. Control Data Corp.</u>, 442 N.W.2d 308, 310-11 (Minn. 1989).

The insured bears the initial burden of showing a claim is covered under an insurance policy.  <u>Dakhue Landfill, Inc. v. Employers Ins. of Wausau</u>, 508 N.W.2d 798, 803 (Minn. Ct. App. 1993).  This means the Kycia Defendants have the burden of showing coverage.  If policy coverage is established, the insurer bears the burden of proving the claim is subject to an exclusion.  <u>Id.</u>

The Court finds the PSK Policy's terms are explicit:  local chapter and individual fraternity members' coverage is limited to particular circumstances when three criteria are met.  The entity or person is insured:

> [1] only while acting in accordance with the "Named Insured" policies and procedures and their own policies and procedures; and [2] only while acting within the scope of their duties; and [3] only with respect to their liability for activities performed by them on behalf of the [National or Local Fraternity].

Policy, "Who is Insured Endorsement," JFR-FSL-064.  Finding no ambiguity in this language, the Court interprets the policy according to its plain language.

11

Plaintiff contends the Local Chapter and Individual Defendants do not qualify as insureds for the events leading to Kycia's death because they were not acting in accordance with the National Fraternity's alcohol policy, they were not acting within the scope of their duties, and they were not acting on behalf of the National Fraternity or the Local Chapter.  The Court agrees.

The Underlying Complaint's theory of liability is premised on the fraternity members' acts in furnishing alcohol to Patrick Kycia and failing to take reasonable steps to protect his safety once he became intoxicated.  The Kycia Defendants now want to turn the Underlying Complaint on its head by arguing their negligence claims of failure to use reasonable care are separate and distinct from their alcohol-related claims and, hence, do not rely upon acts that would violate the fraternity alcohol policy.

The Court finds the Kycia Defendants have failed to meet their burden of establishing that either the Local Chapter or the Individual Defendants qualify as insureds under the policy.  Even if the negligence claims were viewed as allegations separate and distinct from those involving alcohol - which is almost impossible to do - the Court cannot deceive itself to find the Individual Defendants were acting in a capacity covered by the policy.

Even if the Court could imagine that the party-givers were acting on behalf of the fraternity, no reasonable jury could conclude this party was in accord with either the Local Chapter's or the National Chapter's alcohol policies.  Alcohol was

absolutely served to minors and intoxicated persons. Serving alcohol to minors is illegal under state laws, and the party was open to non-members. No reasonable jury could possibly find the National Fraternity's Risk Management Manual authorized this party or the behavior engaged in by the Individual Defendants. The Policy limits coverage to members acting in accord with fraternity policies and procedures; therefore, the Individual Defendants do not qualify as Insureds under the Policy.

Plaintiffs have proffered no evidence from which a jury could find any of the Individual Defendants acted toward Patrick Kycia within the scope of their duties as fraternity members. No reasonable jury could find the Individual Defendants' presence at the party fell within the scope of their duties, in light of the party's flagrant violation of the fraternity's alcohol policy. The Kycia Defendants argue the party took place during a season of fraternity recruiting, and from this fact a jury could conclude the Individual Defendants were acting within the scope of their duties in an attempt to recruit fraternity members. The Court cannot deny that underage drinking may go on at fraternity recruiting parties. This fact notwithstanding, the Kycia Defendants' argument fails to establish insurance coverage.

It fails because none of the Individual Defendants were acting in accord with the Local Chapter's or the National Fraternity's policies in the actions and/or inactions they took on the night of the party. Each entity has strict rules and policies

against serving alcohol to minors - and that is what occurred during this event. By particpating in this event, the Individual Defendants placed themselves outside of the definition of an Insured under the plain language of the Policy.

The same is true of the Local Chapter. A Local Chapter is a fraternal organization which can only act through its members. Here, where individual members participated in a non-fraternity event in a fashion not covered by the Policy, there is no basis to find the Local Chapter falls within the definition of an Insured for any liability it may have toward the Kycia Defendants.

Even were the Court to find evidence placing the Local Chapter or Individual Defendants within the Policy's definition of an Insured, the alcohol exclusion policy clearly exempts them from coverage. The insurance policy excludes coverage for "any claim arising out of or in any way resulting from any 'violation' of 'Fraternity Alcohol Policy,'" defined in the policy as the "written rules, regulations, or procedures regarding alcohol." Policy, "Endorsement #E," JFR-FSL-80. As above, the National Fraternity's Risk Management Manual clearly and explicitly prohibits parties such as the one at issue here. The Kycia Defendants' negligence claims - and the tragic loss of Patrick Kycia - have arisen from a blatant and horrific violation of this policy. Accordingly, these claims, and any others that arose from the party, are excluded from coverage.

III.   Conclusion

For the reasons stated above, the Court finds the Local Chapter and Individual Defendants are not covered by the policy. Accordingly, IT IS ORDERED that:

1.  Plaintiff's motion for summary judgment [Docket No. 89] is granted.

2.  The Kycia Defendants' motion for summary judgment [Docket No. 84] is denied.

3.  Plaintiff is not required under the Policy to defend or indemnify the Phi Omega Chapter of Phi Sigma Kappa at Minnesota State University Moorhead, Marcus O. Carney, Jason J. Morris, or James J. Sander, for claims made against them by the Kycia Defendants.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  August 19, 2008

S/ JAMES M. ROSENBAUM
JAMES M. ROSENBAUM
United States District Judge

15